John J. MARSOLEK, Relator,

v.

**GEORGE A. HORMEL COMPANY,**
**Self–Insured, Respondent.**

No. C1–88–1806.

Supreme Court of Minnesota.

May 5, 1989.

David A. Stofferahn, Sieben, Grose, Von Holtum, McCoy & Carey, Ltd., Minneapolis, for relator.

E. Michael Forde, Gilmore, Aafedt, Forde, Anderson & Gray, P.A., Minneapolis, for respondent.

COYNE, Justice.

The Workers' Compensation Court of Appeals, by majority decision, reversed a compensation judge's award of temporary total benefits. We reverse in part, affirm in part and remand the matter to the compensation judge for relitigation.

The employee-relator, John J. Marsolek, was employed by the George A. Hormel Company meat packing plant in Austin, Minnesota from 1968 through 1985. During his years of work for Hormel, Marsolek suffered several work-related injuries. In September 1981, Marsolek injured his low back. Hormel accepted liability and compensated Marsolek for a 10% permanent partial disability to the back. In April 1982, Marsolek injured his right knee when he stepped off a forklift onto a broken board. Hormel accepted liability for this injury and compensated Marsolek for a 10% permanent partial disability to the right lower extremity.

Marsolek continued to have problems with his right knee; and in September 1983, he underwent arthroscopic surgery. Following his return to work after knee surgery in November 1983, Marsolek in-

jured his low back when he slipped on a wet floor. He was again off work until January 1984. When he returned to work, he resumed working at his regular job, but because of his work-related disabilities, he was subsequently transferred to a lighter duty "rehabilitation" job.

On August 17, 1985, the union representing Hormel employees went on strike against the company. As a member of the union, Marsolek stopped working at Hormel as of that date. In September 1985, Marsolek started looking for other employment.

During the strike, the union maintained a picket line at the plant; Marsolek participated in this activity from time to time. On December 19, 1985, while on the picket line, Marsolek threatened to damage cars and injure employees attempting to cross the picket line. Based on this conduct, which was videotaped, Hormel subsequently terminated Marsolek's employment. As a result, Marsolek was not asked to return to work when Hormel re-opened its plant in January 1986. Except for a 3–month period of time (April 10, 1987 until July 6, 1987), Marsolek remained unemployed.

Marsolek filed a claim petition for workers' compensation benefits which included a claim for wage loss benefits. The compensation judge found that Marsolek sustained a 20% permanent partial disability to the right lower extremity as a result of the April 1982 accident; and an "overall" 20% permanent partial disability to the back as a result of the November 1983 accident. The compensation judge awarded temporary total disability benefits from September 30, 1985, the date he determined that Marsolek began a diligent work search, through April 10, 1987; temporary partial disability benefits from April 11, 1987 through July 5, 1987; and temporary total disability benefits after July 5, 1987. The compensation judge concluded that the cause for Marsolek's termination was irrelevant to Hormel's obligation to pay disability benefits. On appeal, the Workers' Compensation Court of Appeals (3–2) determined that the discharge for misconduct was relevant to the employee's right to further benefits and reversed the entire award of temporary total benefits on grounds that the compensation judge's finding of a diligent work search did not have substantial evidentiary support.

■ The primary issue in this case concerns the effect of a discharge for misconduct. We start with the basic tenet that an employer is liable for the payment of compensation benefits—be they temporary total disability benefits or temporary partial disability benefits—when an employee suffers a wage loss that is attributable to a work injury. Minn.Stat. § 176.021, subd. 3 (1982). *See Morehouse v. Geo. A. Hormel & Co.*, 313 N.W.2d 8, 10 (Minn.1981) (temporary partial); *Dorn v. A.J. Chromy Constr. Co.*, 310 Minn. 42, 46–47, 245 N.W.2d 451, 453–54 (1976) (temporary partial); *Schulte v. C.H. Peterson Constr. Co.*, 278 Minn. 79, 83, 153 N.W.2d 130, 133–34 (1967) (temporary total). As Professor Larson states, sometimes the causal relationship between the wage loss and the work-related disability is complicated by economic factors and by voluntary conduct on the part of the employee that contributes to a period of unemployment, such as when an employee is fired for misbehavior. According to Professor Larson:

> If the record shows no more than that the employee, having resumed regular employment after his injury, was fired for misconduct, with the impairment playing no part in the discharge, it will not support a finding of compensable disability. But if to this record there is added evidence that the claimant has been hampered by his impairment in obtaining or holding other employment, the question is not quite so one-sided.

2 A. Larson, *The Law of Workmen's Compensation* § 57.64(a), at 10–264 to 10–267 (1987) (footnotes omitted). In some jurisdictions, compensation is denied while in others it is allowed upon evidence of a diminution in earning power attributable to the work injury. *See id.* at 10–267 n. 47.1 (collecting cases). Larson believes that a total denial of benefits "for a moment's fighting" is inappropriate and should be adjusted by legislation that can "handle discharge for misconduct and voluntary quitting by a penalty of a limited number of weeks' compensation rather than complete loss of benefits." *Id.* at 10–269.

In Minnesota, in cases involving workers injured prior to January 1, 1984, compensation has been denied when the record showed no more than a discharge for misconduct. *See Rogde v. United Van Bus Delivery*, 330 N.W.2d 715, 717 (Minn.1983) (compensation denied where truck driver lost drivers license as result of DWI conviction); *Powers v. Eddy's Baking Co.*, 261 Minn. 363, 369–70, 112 N.W.2d 625, 629–30 (1961) (compensation denied for periods of unemployment attributed to discharge for absenteeism). However, where there was added evidence that the injured employee was unable to find other employment because of his disability, compensation was allowed. In *Kurowski v. Kittson Memorial Hospital*, 396 N.W.2d 827, 830 (Minn. 1986), we found that a worker discharged for misconduct may not be forever deprived of benefits under the Act. In *Johnson v. State Department of Veterans Affairs*, 400 N.W.2d 729, 731–32 (Minn.1987), in reliance on *Kurowski*, we reinstated an award of benefits to a worker who quit a job for nondisability reasons, after a short period of unemployment made a reasonably diligent search for employment, found employment and, in support of her claim for benefits, presented evidence as to the causal relationship between her wage loss and disability.

The compensation judge assigned to Marsolek's case determined that the discharge for misconduct was irrelevant and awarded benefits upon a finding of a diligent work search. The Workers' Compensation Court of Appeals concluded that the discharge for misconduct was relevant but agreed that benefits were payable upon commencement of a diligent work search. However, the Workers' Compensation Court of Appeals vacated the award of temporary total disability benefits back to the date of the strike by reversing the compensation judge's finding of a diligent work search.

It seems to us that by focusing so much effort on the quality of the work search and effect of the misconduct, the parties' attention has been diverted from the essential purpose of the Act, and consequently from the purpose of these proceedings, which is to compensate injured workers for a wage loss that is attributable to a work injury. Accordingly, for purposes of clarification, we now hold that a justifiable discharge for misconduct suspends an injured employee's right to wage loss benefits; but the suspension of entitlement to wage loss benefits will be lifted once it has become demonstrable that the employee's work-related disability is the cause of the employee's inability to find or hold new employment. Such a determination should be made upon consideration of the totality of the circumstances including the usual work search "requirements."

■ In light of the foregoing, we vacate the decision and order of the Workers' Compensation Court of Appeals denying the employee's claim for temporary total benefits from August 17, 1985 to April 10, 1987 and from July 6, 1987 up to the date of the hearing; and we remand the matter to the compensation judge for relitigation. On remand, we direct that the question of the right to temporary total benefits following the commencement of the strike also be relitigated in light of *Fielding v. Geo. A. Hormel Co.*, 439 N.W.2d 12 (Minn. 1989). The decision of the Workers' Compensation Court of Appeals is in all other respects affirmed.

Reversed in part, affirmed in part and remanded to the compensation judge for further proceedings.

Employee is awarded $800 in attorney fees on appeal.

KELLEY, J., took no part in the consideration or decision of this case.